**GILROY CANNING COMPANY, INC., Plaintiff,**

v.

**CALIFORNIA CANNERS AND GROWERS, Defendant.**

**No. C 97–20035 PVT.**

United States District Court, N.D. California, San Jose Division.

July 21, 1998.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TRUMBULL, United States Magistrate Judge.

The parties appeared before Magistrate Judge Trumbull at 10:00 a.m. on July 7, 1998 for hearing on Defendant's motion for summary judgment or, in the alternative, partial summary judgment. Based upon the arguments and briefs presented, the court DENIES Defendant's motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Gilroy Canning Company, Inc. ("GCC") brings a sole cause of action against California Canners and Growers ("Cal Can") under the Resource, Conservation and Recovery Act (RCRA) pursuant to RCRA § 7002(a)(1)(B). Cal Can owned the property located at 1 Lewis Street in Gilroy, California (the "Site") from 1965 to 1983, during which it operated a food cannery. In July, 1983, Cal Can filed for bankruptcy under Title 11, Chapter 7 of the United States Bankruptcy Code.

In July, 1983, Custom Food Machinery ("CFM") purchased the Site from Cal Can. The Asset Purchase Agreement between Cal Can and CFM contained an "as is" clause. CFM subsequently leased the Site to GCC, and GCC purchased the Site in 1984.

In January, 1994, the California Regional Water Quality Control Board, Central Coast Region ("CRWQCB") issued Cleanup and Abatement Order No. 94–35 ("Order"). The Order documents petroleum hydrocarbon contamination in the soils and groundwater at the Site, as well as Tetrachlosoethylene ("PCE") and other VOCs contamination in the groundwater. PCE, petroleum hydro-carbon, benzene, toluene, 1,1 dichloroethane and naphthalene is hazardous waste as defined by RCRA. The Order requested further investigation and cleanup of the contaminants.

GCC conducted investigative work, and the CRWQCB removed the requirements to remediate and monitor the groundwater for solvent contamination in a letter dated May 23, 1997. The requirements to remediate and monitor remained as to the petroleum hydrocarbons.

Regulatory oversight was transferred from CRWQCB to the Santa Clara Valley Water District ("SCVWD"). On June 9, 1998, SCVWD issued a letter to GCC, ordering submission of a work plan by July 15, 1998, addressing suspected solvent contamination.

GCC seeks an injunction mandating that Cal Can take all acts necessary to investigate and abate the imminent and substantial endangerment to health and the environment which exists at the Site, including, without limitation, requiring Cal Can immediately and at its sole cost, to develop and implement a workplan. Plaintiff applied to bankruptcy court for relief from automatic stay to bring this suit against Defendant. Bankruptcy court entered a stipulated order granting Plaintiff relief from stay on December 3, 1997, limiting enforcement of Defendant's liability under RCRA to the extent of Defendant's available insurance coverage.

## II. ANALYSIS

On summary judgment, the moving party must demonstrate that no genuine issue of material fact exists for trial and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party is "entitled to a judgment as a matter of law" if the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Id.* at 317–18, 106 S.Ct. 2548. The moving party is not required to *negate* those portions of the nonmoving party's claim on which the nonmoving party bears the burden of proof. *Id.*

Defendant contends it is entitled to judgment as a matter of law based on three theories [1]:

1) The suit is barred because Plaintiff's relief under RCRA is limited to injunctive relief, such relief cannot be enforced against Cal Can's insurance carriers, and the bankruptcy court's order precludes enforcement directly against Cal Can.

2) Plaintiff is bound by the "as is" clause between defendant and CFM, and therefore estopped from bringing the present action.

3) Plaintiff's "private party" cause of action pursuant to RCRA is barred as moot on the ground that the SCVWD and CRWQCB are diligently enforcing investigation and remediation at the Site.

For the reasons discussed below, none of Defendant's theories warrant entry of summary judgment.

## A. Enforceability of Judgment

■ Pursuant to the order of the bankruptcy court, Cal Can's insurance policies are the only assets available to satisfy any judgment entered by the court. The policies all contain the following language:

"[insurer] will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages..."

Cal Can argues that injunctions are not "damages," and therefore are not covered by its insurance policies. As a result, Cal Can asserts, there would be no purpose in entering an injunction, which it contends is the only relief available under RCRA, and thus GCC's cause of action fails as a matter of law.

Cal Can contends that GCC cannot recover any cleanup costs and fees under a RCRA cause of action. Clearly this is true for pre-litigation cleanup costs. *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 116 S.Ct. 1251, 134 L.Ed.2d 121 (1996) (citizen suit provision of RCRA does not authorize private cause of action to recover prior cost of cleaning up toxic waste that does not continue to pose danger to health or environment at time of suit). The primary relief available to a private party under RCRA is a mandatory injunction, i.e., one that orders a responsible party to "take action" by attending to the cleanup and proper disposal of toxic waste, or a prohibitory injunction, i.e., one that "restrains" a responsible party from further violating RCRA. *Id.* at 484, 116 S.Ct. 1251.

However, the Supreme Court left it open for the lower courts to determine whether a private party may retroactively recover cleanup costs incurred *after* properly commencing a RCRA suit or invoking RCRA's statutory process. See *Meghrig* at 481, 488, 116 S.Ct. 1251; as recognized in *Avondale Federal Savings Bank v. Amoco Oil Co.*, 997 F.Supp. 1073, 1998 WL 125686 (N.D.Ill.) and *PMC, Inc. v. Sherwin–Williams Co.*, 1997 WL 223060 (N.D.Ill.1997). Thus post-filing cleanup costs are not clearly barred by RCRA.

If at trial the court finds Cal Can liable, the court may enjoin Cal Can to pay for future investigation and remediation costs at the Site. Cal Can's liability does not rest on whether or not an injunction can be enforced only against Cal Can's insurance carriers. Summary judgment would be inappropriate.[2]

## B. Effect of "As Is" Clause

■ Cal Can maintains that, since the original Asset Purchase Agreement between Cal Can and CFM contained an "as is" clause, and that GCC did not conduct a due diligence investigation prior to purchasing

1. Defendant's also moved for partial summary judgment with respect to whether it should be required to remediate alleged solvent contamination, based on the May 23, 1997 letter from the CRWQCB to Plaintiff granting closure on the solvent contamination. The solvent contamination issue is moot. The June 9, 1998 letter from SCVWD to GCC indicates the existence of solvent contaminants that may pose an imminent and substantial endangerment to health or the environment.

2. The parties dispute the extent of contamination and the scope of the investigation and remediation necessary to abate the endangerment at and in the vicinity of the Site. No evidence was submitted with this motion on the extent of contamination, so it remains to be determined at trial.

the Site, GCC is estopped from bringing any claims against Cal Can. The "as is" clause does not bind GCC because there is no contractual privity between Cal Can and GCC.

Even if privity existed between Cal Can and GCC, the "as is" clause is preempted by RCRA and therefore is unenforceable. Although there is no case law which specifically addresses "as is" clauses in conjunction with RCRA claims, a number of cases discuss "as is" clauses with respect to CERCLA claims. Courts have held that "as is" agreements do not overcome CERCLA's strict liability schemes as they would circumvent both the intent and language of CERCLA. *Wiegmann & Rose International Corp. v. NL Industries,* 735 F.Supp. 957 (N.D.Cal.1990). The *Wiegmann* court stated that the "as is" provision in this case was standard, boilerplate language used in every contract and deed for the transfer of property, and only protected the defendant from claims for breach of warranty and not from statutory causes of action. *Id.* at 961.

In contrast, the court in *Jones–Hamilton Co. v. Kop–Coat, Inc.,* 750 F.Supp. 1022 (N.D.Cal.1990) released the defendant from CERCLA liability, upholding an indemnity clause. See also, *Olin Corp. v. Consolidated Aluminum Corp.,* 5 F.3d 10 (2nd Cir.1993), *Harley–Davidson, Inc. v. Minstar, Inc.,* 41 F.3d 341 (7th Cir.1994). The *Jones–Hamilton* court relied on Ninth Circuit law which states that the freedom of private parties to contract amongst themselves is not impinged by CERCLA, and there is no public policy against private parties bargaining over indemnity. The *Jones–Hamilton* court specifically distinguished indemnity clauses from "as is" clauses, stating that the unambiguous language of the indemnity clause encompasses all losses, damages and costs resulting from any violation of law, whereas an "as is" clause is not sufficient to release a seller of property from CERCLA liability.

RCRA, like CERCLA, is a strict liability statute. Cal Can does not argue that RCRA should be distinguished from CERCLA in relation to this "as is" clause issue. Therefore, pursuant to *Wiegmann,* the "as is" provision does not bar RCRA liability since it would contravene the purpose of the statute.

Defendant is not entitled to judgment as a matter of law on the "as is" clause issue, and therefore summary judgment is not warranted here.

## C. Diligent Pursuit

■ Cal Can alleges that GCC's cause of action pursuant to RCRA is barred as moot on the ground that the SCVWD and CRWQCB are diligently enforcing investigation and remediation at the Site. 42 U.S.C.A. § 6972(b)(2)(B)(iv), cited by Cal Can, reads as follows:

"(B) No action may be commenced under subsection (a)(1)(B) of this section if the Administrator, in order to restrain or abate acts or conditions which may have contributed or are contributing to the activities which may present the alleged endangerment—

(iv) has obtained a court order (including a consent decree) or issued an administrative order under [42 U.S.C.A. § 9606] or section 6973 of this title pursuant to which a responsible party is diligently conducting a removal action, Remedial Investigation and Feasibility Study (RIFS), or proceeding with a remedial action."

This section is irrelevant because it refers to the "Administrator," who is defined as the Administrator of the Environmental Protection Agency. See 42 U.S.C.A. § 6903(1). Neither the SCVWD nor the CRWQCB qualify as the Administrator of the EPA.

■ GCC is also not barred from pursuing this cause of action pursuant to 42 U.S.C.A. § 6972(b)(2)(C). That section bars a private cause of action where the State has either commenced and is diligently prosecuting an action under 42 U.S.C.A. § 6972(a)(1)(B), is actually engaging in a removal action under CERCLA, or has incurred costs to initiate a RIFS under section 104 of CERCLA and is diligently proceeding with a remedial action under that act. The orders and/or directives of the SCVWD and CRWQCB are considered state administrative action, and do not constitute diligent prosecution under 42 U.S.C.A. § 6972(a)(1)(B). See, *Orange Environment, Inc. v. County of Orange,* 860 F.Supp. 1003

(S.D.N.Y.1994) (RCRA provision barring citizen suit where state is diligently prosecuting action does not apply with respect to state administrative action).

GCC is not barred from pursuing this cause of action under any statute. Therefore summary judgment is not appropriate here.

### III. CONCLUSION

Defendant has failed to establish that it is entitled to judgment as a matter of law, and thus its motion is DENIED.